UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| BNSF Railway Company,<br><br>Plaintiff,<br><br>v.<br><br>CMG Oil & Gas, Inc.,<br><br>Defendant. | Court File No. _____<br><br>**COMPLAINT** |

Plaintiff BNSF Railway Company ("BNSF") complains as follows:

## PARTIES

1. BNSF is a Delaware corporation, with a Fort Worth, Texas principal place of business. BNSF operates trains throughout the United States, including near Tioga, North Dakota.

2. CMG Oil & Gas, Inc. is a North Dakota corporation, with a Bismarck, North Dakota principal place of business. CMG employs truck drivers and owns and operates trucks. CMG does significant business in North Dakota.

## JURISDICTION AND VENUE

3. The events that give rise to this lawsuit took place near the City of Tioga, in Mountrail County, North Dakota.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332: the parties are citizens of different states; the amount in controversy exceeds $75,000.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a): CMG does significant business in North Dakota; the acts and omissions at issue occurred in North Dakota.

## BACKGROUND

**CMG's operations and Marvin Bell's employment**

6. CMG's is an oil and gas exploration service business. To conduct operations, CMG owns commercial trucks and employs commercial truck drivers.

7. As an owner of commercial vehicles and employer of commercial truck drivers, CMG is regulated by the U.S. Department of Transportation. Federal regulations charge CMG with responsibility for its drivers, including ensuring compliance with traffic laws and safety requirements, driver certifications, and hours of service limitations.

8. Prior to August 13, 2012, CMG hired Marvin Bell to drive truck. Before putting Bell behind the wheel, CMG had to be sure Bell was certified, qualified, trained, and fit to operate a commercial vehicle.

9. CMG had a duty to train and supervise Bell. CMG was responsible for Bell's safe operation of the tractor-trailers to which he was assigned, the performance of Bell's driving duties, and his operation of commercial vehicles on and around railroad crossings. CMG was also responsible for overseeing hours of service compliance.

**The August 13, 2012 collision**

10. On August 13, 2012, 62-year-old Bell drove a CMG-owned commercial truck carrying gravel south on 101st Avenue NW, which is four miles east of Tioga, North Dakota.

11. At approximately 7:20 AM, Bell approached BNSF tracks on 101st Avenue NW. Cross bucks that were installed in 1995, with the participation of federal funds, protected the crossing and warned motorists of the danger posed by trains.

12. As Bell approached the crossing, two BNSF locomotives hauling over 100 freight cars bore down on the crossing, traveling east in full compliance with the federal speed limit. The locomotive bell rang and the locomotive horn sounded at the appropriate place and in the appropriate sequence as the train came up to the crossing.

13. Despite the cross bucks that require motorists to yield the right-of-way and the plainly visible locomotive, Bell proceeded into BNSF's right-of-way and onto BNSF's tracks.

14. Upon realizing that the truck was not going to yield and concluding that a collision was imminent, the engineer engaged the emergency brakes. Unfortunately, the train could not be stopped in time.

15. The force of the ensuing crash derailed the two locomotives and approximately forty six flatbed rail cars carrying approximately 117 shipping containers. The impact damaged BNSF's locomotives, rail cars, shipping containers, product in the shipping containers, and tracks; the wreckage shut down the rail line that runs through Tioga, North Dakota. BNSF and Amtrak trains suffered delays.

16. The crash also spilled gravel that was being hauled by the CMG truck all over the road and BNSF's right-of-way. Bell died at the scene.

**Post-accident clean up**

17.     Although not at fault for the collision, BNSF raced to the scene and worked with law enforcement and transportation officials to control and remediate the situation the crash caused.

18.     BNSF moved the derailed locomotives and cars away from the tracks and into a nearby field in order to repair the tracks. The line was put back in service in about 36 hours, which enabled the nearly 700 stranded Amtrak passengers to continue their journey. Clean-up at the site, however, continues.

19.     The state and local emergency response agencies and departments will undoubtedly seek reimbursement for law enforcement, traffic control, clean up, medical, and transportation personnel time and expenses. Amtrak passengers may also sue to redress the inconvenience the derailment caused. BNSF has lost revenue and may have to pay penalties to Amtrak for the delay caused by the derailment.

20.     The collision closed 101st Avenue NW. BNSF is continuing to clean up the site in order to abate the CMG-created public and private nuisance.

21.     Even though Bell was acting within the scope and course of his CMG employment, operating the CMG-owned truck, and under CMG's supervision, CMG has provided no assistance and offered no financial support.

## CAUSES OF ACTION

### Count I – respondeat superior

22.     On August 13, 2012, Bell drove CMG's truck within the scope of his employment and in furtherance of CMG's business.

23. As Bell's employer and the truck's owner, CMG is responsible for Bell's actions that take place within the course and scope of his employment.

24. As a professional truck driver, Bell was obligated to safely operate CMG's tractor-trailer in compliance with state and federal law, as well as CMG's safety policies.

25. Bell breached his duty of care and violated the law by disregarding the cross bucks that required drivers to yield the right-of-way and by pulling out in front of a clearly visible locomotive.

26. Bell's negligence caused BNSF to incur substantial costs, including significant damages to property and equipment. The collision also disrupted BNSF's operations.

27. As a result of CMG's employment of Bell and ownership of the truck, CMG is vicariously liable for Bell's negligence per se and all resulting damages.

### Count II – CMG's negligence

28. CMG had a duty to supervise and oversee Bell's employment performance.

29. On August 13, 2012, CMG breached the duty to supervise Bell when Bell negligently and illegally ignored the cross bucks requiring drivers to yield the right-of-way and pulled out in front of a clearly visible locomotive.

30. As a result of CMG's negligence, BNSF has incurred substantial costs, including significant damages to property and equipment. The collision also disrupted BNSF's operations.

### Count III – Nuisance

31. A private nuisance is "one which affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." N.D. Stat. § 42-01-02.

32. A public nuisance is "one which at the same time affects an entire community or neighborhood or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." N.D. Stat. § 42-01-06.

33. The conduct of CMG and Bell, as CMG's agent, created a nuisance on BNSF's property and right-of-way. The conduct of CMG and Bell created a public nuisance that affected the entire Tioga community.

34. The CMG-created nuisance materially, substantially, and unreasonably interfered with BNSF's use and enjoyment of its property and right-of-way and adversely affected the nearby community.

35. As a result of the CMG-created nuisance, BNSF has incurred substantial costs, including significant damages to property and equipment. The incident has also disrupted BNSF's operations and adversely affected the nearby community.

### Count IV – Trespass

36. BNSF is lawfully entitled to possession and use of its property, tracks, and right-of-way.

37. Without permission, CMG's truck trespassed onto BNSF's property as BNSF's train lawfully approached the crossing with the right-of-way.

6

38. As a result of the trespass, BNSF has incurred substantial costs, including significant damages to property and equipment. The incident has also disrupted BNSF's operations and adversely affected the nearby community.

### Count V – Declaratory judgment for contribution / indemnification

39. CMG's respondeat superior, vicarious liability, and negligent supervision and retention of Bell caused the August 13, 2012 collision.

40. The CMG-created nuisance and trespass further caused damages.

41. To the extent BNSF is sued and held liable to any party for the collision, BNSF is entitled to a judgment against CMG by way of contribution or indemnification, in the amount of any judgment entered against BNSF, plus attorneys' fees and costs incurred in this, or any other, litigation.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BNSF demands trial by jury.

**WHEREFORE**, BNSF requests judgment, the award of all damages incurred as a result of the collision and cleanup, together with prejudgment interest, expenses, costs, and reasonable attorneys' fees, and a declaration that CMG is liable by way of indemnification or contribution for any future claims brought against BNSF arising out of the August 13, 2012 collision.

Dated: August 17, 2012                       **BRIGGS AND MORGAN, P.A.**

By: *s/ Timothy R. Thornton*
    Timothy R. Thornton (MN #109630)
    Jonathan P. Schmidt (MN #329022)
    Matthew R. Brodin (MN #386580)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400

**Attorneys for Plaintiff**

4893062v3